UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ANTHONY DEWOLF, et al.,

Plaintiffs,

v.

HYDROCHEMPSC, et al.,

Defendants.

Civil Action No. 2:20-cv-03378-KSH-CLW

OPINION

I. Introduction

This matter comes before the Court on the motion of plaintiffs Anthony DeWolf, et al. ("Plaintiffs") seeking leave to file an amended complaint [ECF No. 43]. Defendants HydroChemPSC, HydroChem, LLC, and HydroChem Industrial Cleaning, LLC ("Defendants") have opposed the motion and Plaintiffs have filed a reply. ECF No. 46, 49. Plaintiffs' motion has been referred to the undersigned by the Honorable Katharine S. Hayden. The Court has carefully considered the parties' submissions and decides the matter without oral argument per FED. R. CIV. P. 78(b) and Local Civil Rule 78.1. For the reasons stated below, the Court GRANTS Plaintiffs' motion.

II. Background

This matter's procedural history is somewhat convoluted but important to the instant motion; the Court will therefore recite it briefly but comprehensively.[1] Approximately two years before Plaintiffs brought this action, a case was filed styled Cosgrove v. Veolia ES Industrial Services Inc., et al., 2:18-cv-00173-KSH-CLW (D.N.J.) ("Cosgrove"). Cosgrove and this case are not

---

[1] For a summary of the relevant factual background, see 2:18-cv-00173-KSH-CLW (D.N.J.), ECF No. 136 at 2-4 and ECF No. 154 at 1-2.

formally related but are very similar: the plaintiffs in both actions (i) allegedly performed work at PSEG work sites as part of New Jersey's "Energy Strong Program" geared toward upgrading gas and electric infrastructure after Hurricane Sandy; (ii) seek to recover prevailing wages under (1) N.J.S.A. § 34:13B-2.1 and other New Jersey prevailing wage statutes; and (2) N.J.S.A. § 48:2-29.47, which requires payment of prevailing wages for "construction undertaken with BPU [Board of Public Utilities] financial assistance";[2] and (iii) are represented by the same counsel. Both matters have been assigned to Judge Hayden and referred to the undersigned.

In December 2019, one defendant in Cosgrove moved for judgment on the pleadings. Cosgrove, ECF No. 67. Shortly thereafter, Plaintiffs filed this action in state court and Defendants removed the case to this Court and moved to dismiss. ECF No. 1, 1-1, 3. That motion is pending.

Judge Hayden ruled on the Cosgrove motion for judgment on the pleadings in November 2020. Cosgrove, ECF No. 136. As to the prevailing wage claim, Her Honor wrote that "[w]hether plaintiffs have the right to bring a civil action under N.J.S.A. § 34:13B-2.1 . . . is a key issue that the parties must directly and fully confront before the Court can determine whether [the prevailing wage claim] may proceed further" and directed further briefing on the matter. Id. at 8-9. Judge Hayden has not ruled on that issue. Concerning the BPU claim, Judge Hayden held that the plaintiffs failed to allege that the rate increases that the BPU authorized for PSEG were "incentives" provided by the BPU, as is required to trigger the BPU statute's prevailing wage requirement. She therefore dismissed the BPU claim without prejudice and invited the Cosgrove plaintiffs to seek to file an amended complaint as to that claim. ECF No. 136 at 9-11. In January of this year, the Cosgrove plaintiffs moved to amend their BPU claim. The Court granted that

---

[2] Plaintiffs' original complaint also asserted a breach of contract claim; that claim does not appear in the proposed amended pleading.

motion, and those plaintiffs have filed a fourth amended complaint with amplified BPU allegations. Cosgrove, ECF No. 146, 154, 155. The same Cosgrove defendant has moved to dismiss the revised second claim; that motion is pending. Cosgrove, ECF No. 158.

The Court held a status conference in March of this year. During and shortly after the conference, Plaintiffs represented to the Court that the determination on the (then-pending) Cosgrove motion to amend the BPU claim would be dispositive of Defendants' motion to dismiss the BPU claim in this matter, since the information contained in the then-proposed fourth amended complaint in Cosgrove would cure the pleading deficiencies raised in Defendants' dismissal motion. Plaintiffs thus argued they should be granted leave to amend (i.e., to include here the same information presented in the proposed amended BPU claim in Cosgrove) before the Court rendered a decision on Defendants' motion to dismiss the original complaint. ECF No. 33 at 2-3. Defendants responded that they "agree with Plaintiffs that the Court's recent rulings in Cosgrove . . . are dispositive regarding the issues in this case.[3] Plaintiffs' counsel literally copied and pasted the allegations from the Cosgrove complaint into the complaint filed in this case." ECF No. 34 at 1. Several days later, the Court directed Plaintiffs to file their motion to amend and Plaintiffs timely did so. ECF No. 35, 42, 43. That motion is now before the Court.

---

[3] Although Defendants expressed their "agree[ment]" with Plaintiffs, it seems that the parties were not on the exact same page here. As noted, Plaintiffs' position was that the (then) forthcoming decision on the Cosgrove motion to amend would dispose of the motion to dismiss in this case. ECF No. 33 at 2. Defendants, however, stated that it was the "recent rulings in Cosgrove" – i.e., Judge Hayden's rulings on the motion for judgment on the pleadings – that were dispositive of the issues in this matter. ECF No. 34 at 1. Irrespective, the parties seem to agree (as does the Court) that the issues in Cosgrove align with those here. Accordingly, and although it is true that "[a] decision of a federal district court judge is not binding precedent . . . even upon the same judge in a different case", Seneca Res. Corp. v. Twp. of Highland, 863 F.3d 245, 257 (3d Cir. 2017) (quoting Camreta v. Greene, 563 U.S. 692, 709 n.7 (2011) and citing authorities), the rulings in Cosgrove, while not formally binding, are for all intents and purposes dispositive in this case.

**III.	Legal Standards**

Because Plaintiffs sought leave to amend after the July 20, 2020 deadline for motions to amend the pleadings, ECF No. 9 at ¶ 3, their motion implicates FED. R. CIV. P. 15(a)(2) and 16(b)(4). See, e.g., Karlo v. Pittsburgh Glass Works, LLC, 2011 U.S. Dist. LEXIS 125667, at *9 (W.D. Pa. Oct. 31, 2011) ("Where, as here, the motion [to amend] was filed after the deadline set by the Court, the movant must satisfy the requirements of Rule 16 before the Court will turn to Rule 15.").

Rule 16(b)(4) states that "[a] schedule may be modified only for good cause and with the judge's consent." For purposes of Rule 16(b), "[a] finding of good cause depends on the diligence of the moving party. In other words, the movant must show that the deadlines cannot be reasonably met despite its diligence." Globespanvirata, Inc. v. Tex. Instruments, Inc., 2005 U.S. Dist. LEXIS 16348, at *9-10 (D N.J. July 11, 2005) (quoting Rent-A-Center v. Mamaroneck Ave. Corp., 215 F.R.D. 100, 104 (S.D N.Y. 2003) and citing FED. R. CIV. P. 16 advisory committee's note ("The court may modify the schedule on a showing of good cause if [the deadlines] cannot be reasonably met despite the diligence of the party seeking the extension.")); see, e.g , Konopca v. FDS Bank, 2016 U.S. Dist. LEXIS 41002, at *4 (D.N.J. Mar. 29, 2016) ("To show good cause, 'the moving party must demonstrate that a more diligent pursuit of discovery was impossible.'") (quoting Alexiou v. Moshos, 2009 U.S. Dist. LEXIS 81815, at *8 (E.D. Pa. Sept. 9, 2009)). "The 'good cause' standard is not a low threshold. Disregard for a scheduling order undermines the court's ability to control its docket, disrupts the agreed-upon course of the litigation, and rewards 'the indolent and cavalier.'" J.G. v. C.M , 2014 U.S. Dist. LEXIS 56143, at *4-5 (quoting Riofrio Anda v. Ralston Purina Co., 959 F.2d 1149, 1154-55 (1st Cir. 1992)).

4

Assuming good cause is shown, the Court proceeds to Rule 15(a)(2), under which "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." The "three instances when a court typically may exercise its discretion to deny a Rule 15(a) motion for leave to amend [are] when '(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party.'" United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co., 839 F.3d 242, 249 (3d Cir. 2016) (quoting U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P , 769 F.3d 837, 849 (3d Cir. 2014)). The Third Circuit "has interpreted these factors to emphasize that 'prejudice to the non-moving party is the touchstone for the denial of the amendment.'" Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989) (quoting Cornell & Co. v. Occupational Safety and Health Rev. Comm'n, 573 F.2d 820, 823 (3d Cir. 1978)).

IV. Analysis

    a. Rule 16

Defendants argue that Plaintiffs' motion fails under Rule 16(b) because Plaintiffs were not diligent in seeking amendment.[4] According to Defendants, because the information contained in the proposed amended BPU claim was available to Plaintiffs well before the filing of this action, Plaintiffs' failure to include these allegations in their initial pleading renders them non-diligent.

---

[4] As a preliminary matter, Defendants correctly note that Plaintiffs did not raise Rule 16 in their moving papers. Defendants assert this argument is therefore waived. Although there is authority supporting this position, the Court will exercise its discretion to address Plaintiffs' diligence on the merits. See, e.g., Sussman v. Soleil Mgmt., 2019 U.S. Dist. LEXIS 200517, at *6 (D. Nev. Oct. 16, 2019) ("[A]s an initial matter, the court is troubled by Defendants' failure to raise and address Rule 16(b)(4) in its opening brief . . . . However, in the interest of resolving the parties' dispute on the merits, the court considered Defendants' arguments in its opening and reply briefs.").

See, e.g., Price v. Trans Union, LLC, 737 F. Supp. 2d 276, 280 (E.D. Pa. 2010) ("Where . . . the party knows or is in possession of the information that forms the basis of the later motion to amend at the outset of the litigation, the party is presumptively not diligent.") (citing cases).

Plaintiffs' response, which with the Court agrees, is based on the notion that N.J.S A. § 48:2-29.47 – the statute at the center of Plaintiffs' BPU claim – received its first treatment by a reviewing court in Judge Hayden's decision on the Rule 12(c) motion in Cosgrove. While the statute has been passingly addressed several times by state agencies, the first (and thus far, only) time a court has weighed in on what a colorable § 48:2-29.47 claim looks like was on November 30, 2020, when Judge Hayden dismissed the Cosgrove plaintiffs' BPU claim without prejudice. Before that ruling, Plaintiffs had no reason to seek to add the supporting allegations here, since there was no case law or other authority indicating that a viable BPU claim required those allegations. Consequently, while it is true that diligence is measured from the time when a party "knows or is in possession of the information that forms the basis of the later motion to amend", Price, supra, here, such information is not, as Defendants contend, the facts set forth in the proposed amended complaint, but instead the necessity to include these allegations in a § 48:2-29.47 pleading. That information became available to Plaintiffs only upon Judge Hayden's ruling in Cosgrove.

The inquiry therefore becomes whether Plaintiffs were diligent in seeking leave to amend, which they did four months after Judge Hayden's decision. This is slightly longer than courts in this circuit generally permit parties to move to amend after learning new information. See, e.g., Home Semiconductor Corp. v. Samsung Elecs. Co., 2019 U.S. Dist. LEXIS 82723, at *13 (D. Del. May 16, 2019) ("[C]ourts in the Third Circuit have found diligence when a party has sought leave

to amend within three months of learning new information . . . .") (citing Logan v. Bd. of Educ. of Sch. Dist. of Pittsburgh, 2017 U.S. Dist. LEXIS 36592, at *15 (W.D. Pa. Mar. 15, 2017)). Ultimately, though, "[t]he decision to grant leave to amend rests within the sound discretion of the trial court." Maxlite, Inc. v. ATG Elecs , Inc. 2021 U.S. Dist. LEXIS 190796, at *23 (D.N.J. Oct. 4, 2021) (citing Zenith Radio Corp. v. Hazeltine Research Inc., 401 U.S. 321, 330 (1970)). To this end, while it may be true that Plaintiffs delayed slightly more than they should have in seeking leave to amend, the Court is of the view that more important considerations prevail. As discussed, this matter and Cosgrove involve almost identical allegations under the BPU statute, and these are the first two matters of which the Court is aware where a pleading under that statute has been substantively challenged. The Court wishes to avoid a situation where Cosgrove proceeds with the allegations presented in the fourth amended complaint there, while the BPU claim in this matter fails at the gate due to an ultimately immaterial timing issue. It would serve the parties, the Court, and the public far better for the BPU claim here to proceed on the merits as in Cosgrove. The Court therefore exercises its discretion to excuse Plaintiffs' four-month delay in moving to amend, deems Rule 16(b)(4) satisfied, and proceeds to assess Plaintiffs' motion under Rule 15.

    b. Rule 15

        i. Futility (Count I)

Defendants attack as futile the proposed amendment as to Plaintiffs' prevailing wage claim, which is identical to the first claim in the fourth amended complaint in Cosgrove. See ECF No. 49-1 at ¶¶ 91-94; Cosgrove, ECF No. 155 at ¶¶ 82-85. As noted, Judge Hayden directed supplemental briefing in Cosgrove as to whether N.J.S A. § 34:13B-2.1 permits a private right of action and has not yet issued a determination on the matter. For this reason, this Court, in

assessing the Cosgrove motion to amend, expressly declined to issue "any findings regarding the sufficiency of the claims set forth in Count I of Plaintiffs' proposed amended pleading, as that issue remains pending before Judge Hayden." Cosgrove, ECF No. 154 at 14; id. at 4 n.2. Because the proposed amendments as to the first count in Cosgrove were ministerial, and because the substance of that count was (and still is) subject to a forthcoming decision from Judge Hayden, the Court granted the Cosgrove plaintiffs leave to amend their first claim. Id. at 13-14.

This case differs only in that Defendants have argued on this motion that Plaintiffs' first count is futile. They contend that there is no private right of action under § 34:13B-2.1; i.e., the precise issue on which Judge Hayden ordered supplemental briefing in Cosgrove. ECF No. 46 at 20-21. For this reason, as in Cosgrove, the Court declines to rule at this time on the sufficiency of Plaintiffs' first claim. For the sake of consistency, the Court will permit Plaintiffs to plead this claim and will revisit this issue, if necessary, once Judge Hayden has ruled in Cosgrove.[5] The Court emphasizes that this determination is made in the interests of uniformity and judicial economy and, as with its parallel ruling in Cosgrove, is not an endorsement of the substantive merits of Plaintiffs' first claim.

    ii. **Futility (Count II)**

Defendants similarly argue the proposed BPU claim is futile. Consistent with the above, they write in connection with their futility argument (and the Court agrees) that "the holdings of the Court in Cosgrove et al. v. Veolia are dispositive regarding the issues in this case." ECF No. 46 at 18-19, 21. As noted, this Court has since ruled in Cosgrove that the revised BPU claim there — which is identical to the proposed BPU claim here — passes Rule 15 muster. In reaching this

---

[5] Defendants' motion to dismiss likewise argues that there is no private right of action under § 34:13B-2.1. ECF No. 3-1 at 17-19.

conclusion, the Court observed that Judge Hayden found two shortcomings in the <u>Cosgrove</u> BPU claim:

> First, Her Honor observed that "[t]he factual scenario plaintiffs allege does not indicate that that BPU's approval of the rate increases 'motivate[d]' or 'encouraged' PSEG to undertake the Energy Strong Program. To the contrary, the third amended complaint alleges that '[a]s a result of the damage caused by Hurricane Sandy,' PSEG 'sought and obtained' the approval, indicating that PSEG, not the BPU, initiated the process." Second, Judge Hayden noted that utilities are legally required to obtain BPU approval for all rate increases. Her Honor found that while utilities may recoup expenditures for those projects through rate increases, the BPU does not necessarily incentivize all such projects by approving routine requests for rate changes.

<u>Cosgrove</u>, ECF No. 154 at 12 (discussing <u>Cosgrove</u>, ECF No. 136 at 10-11) (citations omitted).

The Court determined that the <u>Cosgrove</u> amendments cured both shortcomings:

> With regard to the former, Plaintiffs now allege that the BPU did, in fact, motivate PSEG's Energy Strong Program through a formal, longstanding policy: ["]PSEG['s] petition for accelerated [']cost recovery mechanisms['] to fund Energy Strong did not arise in a vacuum. As its own application makes clear, PSEG's petition for approval of accelerated cost recovery mechanisms for Energy Strong was made <u>pursuant</u> to the BPU's formally announced policy of providing financial incentives to utilities for infrastructure projects first enunciated in 2009, and similarly to [PSEG's] prior 2009 Petition for similar incentives.["] . . . **As to the second shortcoming** . . . , Plaintiffs now allege that in approving the rate increases in question, the BPU explicitly conditioned them on PSEG making specific improvements to its gas and electricity infrastructure. Plaintiffs also allege that PSEG's 2013 application to the BPU was not a "routine" request for a rate increase, as it "was not scheduled to file its next base rate case until November 2017."

<u>Id.</u> at 12-13 (citing and quoting proposed fourth amended complaint) (citations omitted). The Court also noted that "[t]hese are but a sampling of the factual allegations that Plaintiffs have added in support of their claims. The differences between the [<u>Cosgrove</u> third amended

9

complaint] and [Cosgrove proposed fourth amended complaint] are stark. Whereas the [third amended complaint] contained only a handful of factual allegations regarding the BPU's involvement with PSEG's Energy Strong Program, the [proposed fourth amended complaint] contains significantly more detail." Id. at 13 (citations omitted).

Although Defendants have essentially conceded that these rulings are dispositive here, the Court will briefly address Defendants' futility argument, which is not identical to that raised in Cosgrove.[6] Defendants' argument is primarily based on the notion that for the BPU statute's prevailing wage requirement to apply, the construction work must be "undertaken in connection with Board of Public Utilities financial assistance, or undertaken to fulfill any condition of receiving Board of Public Utilities financial assistance". N.J. Stat. § 48:2-29.47. Defendants state that they never received direct financial assistance from the New Jersey Public Utilities Board and attack the notion that the Energy Master Plan's cost recovery mechanisms otherwise satisfy this requirement. ECF No. 46 at 21-24.

This argument fails. As Judge Hayden held in Cosgrove, the statutory "definition means that the construction work plaintiffs were hired to do must have been undertaken in connection with (a) an 'incentive' that (b) the BPU approved, funded, authorized, administered, or provided. There is no dispute that the BPU approved rate increases; therefore, the 'approval' prong is not at issue. What is in dispute is whether those rate increases were 'incentives.'" Cosgrove, ECF No. 46 at 9-10. In other words, the Cosgrove BPU claim was found wanting only as to the "incentive"

---

[6] Of note, portions of Defendants' opposition (which was filed before this Court's ruling on the motion to amend in Cosgrove) rely on Judge Hayden's analysis of the Cosgrove allegations whose shortcomings have since been cured. As Plaintiffs' proposed amendments mirror the allegations that shored up the deficient ones in Cosgrove, Defendants' arguments based on the assessment of now-outdated allegations are non-starters.

issues noted above (and cured by the proposed amendments); the more fundamental question of whether the BPU provided the statutorily required form of financial assistance has been construed in Plaintiffs' favor. Although the Court is not bound by this determination, Seneca Res. Corp., supra, it sees no reason to depart from it. This suffices to dispose of Defendants' instant futility argument.[7]

### iii. Other Rule 15 Arguments

Defendants raise several other points under Rule 15. They first contend that Plaintiffs have unduly delayed in seeking to assert facts that were known since before the action was filed, an argument rejected above. Defendants similarly assert that Plaintiffs were on notice to amend their BPU allegations from the time Defendants filed their dismissal motion in May 2020. This argument also fails. As noted by the Third Circuit, "a plaintiff is unlikely to know whether his complaint is actually deficient—and in need of revision—until after the District Court has ruled" on a motion to dismiss. United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co., 839 F.3d 242, 250 (3d Cir. 2016). Thus, it was Judge Hayden's ruling in Cosgrove, not the filing of Defendants' motion to dismiss (or the Cosgrove defendant's Rule 12(c) motion, for that matter), that triggered Plaintiffs' duty to promptly move to amend their complaint. As discussed, for present purposes, the Court has determined that Plaintiffs were sufficiently diligent in doing so. The Court therefore rejects Defendants' Rule 15 timeliness arguments.

The Court likewise discerns no bad faith in Plaintiffs' waiting to move to amend until after Judge Hayden ruled in Cosgrove, which Defendants argue was done for the purpose of mooting

---

[7] The Court likewise finds no merit in Defendants' assertions that the proposed amendments do not present facts, but rather provide "textual arguments regarding what certain statutes say or mean" or legal conclusions. ECF No. 46 at 17, 22. To the contrary and as discussed, the revised BPU allegations establish certain requisites for a § 48:2-29.47 claim as outlined by Judge Hayden in Cosgrove.

Defendants' motion to dismiss. There is nothing wrong with Plaintiffs seeking to cure a complaint that they think may be subject to dismissal based upon a recent ruling on a matter of first impression, and Defendants may, of course, seek to dismiss the amended complaint should they wish. The Court similarly rejects the notion that Defendants have been prejudiced by having to "face seriatim amendments following a successful motion to dismiss." ECF No. 46 at 26. First, as there has been no successful motion to dismiss in this matter, Plaintiffs' motion is more accurately viewed as an attempt to obviate the need for the Court to decide a motion to dismiss a non-operative complaint. More fundamentally, a party opposing amendment on prejudice grounds "must do more than merely claim prejudice; 'it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely.'" Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989) (quoting Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing, 663 F.2d 419, 426 (3d Cir. 1981)). As Defendants present nothing to this effect, their prejudice arguments fails.

**V.     Conclusion**

An Order consistent with this Opinion follows.

Dated: November 23, 2021

*/s/ Cathy L. Waldor*
Cathy L. Waldor, U.S.M.J.